DECISION AND JOURNAL ENTRY.
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made.
{¶ 1} Plaintiffs-Appellants/Cross-Appellees Larry Cooperider individually and as administrator of the estate of Alan Cooperider, Judith Cooperider, and Emily Cooperider (collectively, "Appellants") have appealed from a judgment entered in the Medina County Court of Common Pleas in favor of Defendants-Appellees/Cross-Appellants Alan Parker, James Casey, and Reminger Reminger Co., L.P.A. (collectively, "Appellees") in Appellants' legal malpractice action. This Court affirms.
 I {¶ 2} In May 1990, Anthony McEwen gave twelve-year-old Alan Cooperider a ride home from baseball practice in his pickup truck. When they arrived at the Cooperiders' home, Mr. McEwen pulled the vehicle to a stop on the side of the road opposite the Cooperiders' driveway. Alan got out of the vehicle, walked around the front of the truck, and began to cross the street. As Alan moved beyond the front of the truck and into the roadway, he was struck by an oncoming vehicle driven by Stuart Peterseim. Alan died from the impact of the collision.
 {¶ 3} In February 1991, Larry and Judith Cooperider retained the law firm of Reminger Reminger Co., L.P.A. ("Reminger") to pursue the recovery of damages resulting from the accident. Alan Parker, an attorney who worked for Reminger at that time, filed a complaint on behalf of Alan's estate in July 1991. Stuart Peterseim, Stuart's father William Peterseim, and Mr. McEwen were named as defendants in the complaint. The trial court subsequently granted summary judgment in favor of William Peterseim and Mr. McEwen, leaving Stuart Peterseim as the sole remaining defendant. Reminger then voluntarily dismissed the case against Stuart Peterseim, and appealed the trial court's entry of summary judgment in favor of Mr. McEwen. This Court affirmed the trial court's award of summary judgment. See Cooperider v. Peterseim (1995),103 Ohio App.3d 476.
 {¶ 4} In October 1995, Mr. Parker re-filed the complaint on behalf of Appellants against Stuart Peterseim only. Mr. Casey, who also worked as an attorney for Reminger at that time, assisted Mr. Parker on the case. Shortly before trial, the parties agreed to settle the case for $83,500. Because Alan was a minor at the time of the accident, the parties sought approval of the settlement from the probate court. During a hearing before the probate court, the court asked Mr. Casey whether all uninsured and underinsured motorist ("UM/UIM") insurance issues had been explored. At that time Mr. Casey learned that the Cooperiders had maintained UIM coverage. The probate court then continued the hearing so that counsel could contact Heritage Mutual Insurance Company ("Heritage"), the Cooperiders' UIM carrier. Both Heritage and the probate court subsequently approved the $83,500 settlement reached by the parties.
 {¶ 5} In July 1998, Mr. Casey filed a complaint for declaratory judgment on behalf of Appellants against Heritage, seeking a judicial determination that they were entitled to UIM benefits under the policy. In October 1999, Appellant's settled their claims against Heritage for $50,000.
 {¶ 6} Appellants thereafter filed the instant action against Appellees, alleging legal malpractice in handling their claims arising out of Alan's death. Specifically, Appellants alleged that Appellees failed to adequately investigate and ascertain the liability limits of applicable insurance policies, failed to timely file an expert witness report, failed to adequately investigate and advise Appellants of the potential for recovery of UIM coverage, and failed to notify Appellants of Mr. McEwen's willingness to discuss settlement. The matter proceeded to trial before a jury, which returned a verdict in favor of Appellees. The jury completed several interrogatories, which established their findings 1) that Messrs. Parker and Casey owed Appellants a duty or obligation and breached that duty or obligation, but 2) that any legal malpractice committed by Appellees did not proximately and directly cause any damage or loss to Appellants. Appellants then filed a motion for judgment notwithstanding the verdict pursuant to Civ.R. 50(B) or, in the alternative, for a new trial pursuant to Civ.R. 59(A). Appellees filed a memorandum in opposition, and the trial court subsequently denied the motion. Appellants have timely appealed, asserting three assignments of error; Appellees have cross-appealed, asserting two assignments of error.
 II Appellants' Assignment of Error Number One
"The trial court committed reversible error by allowing expert testimony relating to liability of the underlying case, the exclusion of which was previously agreed to by the parties (1) which precluded [appellants] from having a fair trial and resulted in (2) unfair surprise which [appellants] could not have guarded against, and (3) prejudice to [appellants]."
 {¶ 7} In their first assignment of error, Appellants have argued that the trial court erred by admitting into evidence testimony regarding potential liability and recovery in the underlying case against Stuart Peterseim, the driver of the vehicle that struck Alan. Appellants have contended that this testimony concerning the underlying case should have been excluded on the ground that any probative value thereof was outweighed by the danger of unfair prejudice, pursuant to Evid.R. 403(A). Appellants have also maintained that the court should have granted their motion for a new trial as a result of the erroneous admission of this testimony.
 {¶ 8} Evid.R. 403(A) provides: "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." A trial court has broad discretion in determining whether to admit or exclude evidence, and this Court will not reverse an evidentiary ruling unless the trial court has abused its discretion and a party has suffered material prejudice thereby. Weiner, Orkin, Abbate SuitCo., L.P.A. v. Nutter (1992), 84 Ohio App.3d 582, 589. An abuse of discretion is "more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemorev. Blakemore, 5 Ohio St.3d 217, 219.
 {¶ 9} Testimony of Robert Eric Kennedy
 {¶ 10} Appellants have first argued that the trial court erred by permitting Robert Eric Kennedy to offer opinion testimony regarding the likelihood that Appellants would have prevailed in their claims against Stuart Peterseim in the case for which Appellants originally retained the services of Appellees. According to Appellants, the relevance of evidence regarding the probability of whether Appellants would have prevailed at a trial on their claims resulting from Alan's death was outweighed by the danger of unfair prejudice in their action for legal malpractice against Appellees.
 {¶ 11} Appellants have repeatedly asserted that counsel for all parties in the malpractice action entered into an agreement whereby Appellants were not required to prove liability in the underlying case. Appellants' assertions regarding such an agreement between counsel, however, are not supported by any citations to the record. Moreover, the record does not demonstrate that Appellants were required to prove that they would have prevailed in an action against Stuart Peterseim. Rather, Appellants have mischaracterized Appellees' challenge to the proximate cause and damages elements of their malpractice claim as imposing a requirement that Appellants prove liability in the underlying case.
 {¶ 12} Appellants rely on Vahila v. Hall (1997), 77 Ohio St.3d 421, appeal not allowed (1999), 86 Ohio St.3d 1492, for their argument that testimony concerning the probability of Appellants' recovery on their claims in the underlying case should not have been admitted in their malpractice action against Appellees. In Vahila, the Ohio Supreme Court reviewed whether the lower courts properly awarded summary judgment to defendants in a malpractice action "based in part on the fact that [plaintiffs] had failed to establish that, but for the negligence of their attorneys, [plaintiffs] would have been successful in the underlying actions and proceedings in which the alleged malpractice had occurred." Id. at 424. Justice Douglas, writing for the majority, determined that requiring proof of success on the underlying claim in every malpractice action would be unjust because many malpractice cases are based on negligent acts or omissions allegedly committed by their attorneys. Id. at 427. The court quoted with approval the following rationale:
"`[T]he attorney in the original action may have negligently failed to pursue the discovery that would have insured success. If the results of that same discovery are now necessary to prove the merit of the underlying claim — and the passage of time has precluded obtaining that information — the attorney by his own negligence will have protected himself from liability. In such a case, the more negligent the attorney, the more difficult is the plaintiff's task of proving causation.'" Id., quoting Note, The Standard of Proof of Causation in Legal Malpractice Cases (1978), 63 Cornell L.Rev. 666, 670-671.
 {¶ 13} Accordingly, the court rejected the "blanket proposition that requires a plaintiff to prove, in every instance, that he or she would have been successful in the underlying matter." Vahila,77 Ohio St.3d at 428.
 {¶ 14} The court's holding in Vahila does not, however, stand for the proposition that evidence regarding the likelihood of success of the underlying case may never be introduced during a legal malpractice action. Rather, the court acknowledged that "the requirement of causation often dictates that the merits of the malpractice action depend upon the merits of the underlying case. Naturally, a plaintiff in a legal malpractice action may be required, depending on the situation, to provide some evidence of the merits of the underlying claim." Id. at 427-428.
 {¶ 15} In the case sub judice, Mr. Kennedy testified that, based on the police report and the deposition of Stuart Peterseim, Stuart would have had little time to react by swerving or applying his brakes to avoid Alan as he darted into the roadway from behind the parked pickup truck. Based on these facts, Mr. Kennedy opined that establishing fault on the part of the driver would have been "difficult" and "near impossible," and a case against Stuart likely would have been disposed of by a directed verdict.
 {¶ 16} Appellants have argued that Appellees failed to depose police officers who arrived after Stuart's car struck Alan and a neighbor who was at the scene. According to Appellants, Appellees' failure to interview these witnesses prevented Appellants from determining key details about the accident, without which they could not effectively counter Mr. Kennedy's opinion at trial.
 {¶ 17} As both parties have acknowledged, proximate cause and damages are essential elements of a legal malpractice claim:
"To establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss."Vahila, 77 Ohio St.3d 421, syllabus.
 {¶ 18} With respect to the third element, establishing proximate cause and damages, the Tenth District Court of Appeals explained:
"Vahila does not relieve the party who asserts legal malpractice of the burden to show that the complained-of act or omission by its former attorney was the proximate cause of its alleged damage or loss. If the act or omission — even one that fails to conform to the standard required — does not relate to an underlying claim that is at least colorable, then it becomes difficult to conceive that damages or loss could be a proximate result of that act or omission." Nu-Trend Homes,Inc. v. Law Offices of DeLibera, Lyons Bibbo, 10th Dist. No. 01AP-1137, 2003-Ohio-1633, at ¶ 19, appeal denied (2003),2003-Ohio-3957.
 {¶ 19} By offering an opinion about the likelihood of Appellants' success on their claims against Stuart Peterseim, Appellees were not compelling Appellants to prove that they would have prevailed in an action against Stuart Peterseim; rather, Appellees were maintaining that Appellants did not sustain damages as the proximate cause of any breach of the standard of care by Appellees. If Appellants believed Mr. Kennedy's opinion was based on incomplete information, they were entitled to, and did, attempt to discredit Mr. Kennedy's conclusions by questioning him about his factual bases. Moreover, Appellants' claim that they were unfairly surprised by Mr. Kennedy's testimony is not supported by the record. On the contrary, the record reveals that Appellants filed a motion in limine more than seven months before trial, requesting that the court exclude evidence by Mr. Kennedy pertaining to his opinion about liability and the probability that Appellants would have prevailed on their claims in the underlying case. Appellees filed a memorandum in opposition to the motion, and the court subsequently entered an order denying the motion on the ground that Mr. Kennedy's opinion was relevant to the issue of damages in the malpractice case. Consequently, the trial court did not abuse its discretion in determining that the probative value of Mr. Kennedy's testimony was not outweighed by the danger of unfair prejudice to Appellees.
 {¶ 20} Testimony of David L. Uhrich, Ph.D.
 {¶ 21} Appellants have next argued that the trial court erred by admitting testimony of Dr. David Uhrich, the accident reconstruction expert hired by Appellees during their representation of Appellants in the case against Stuart Peterseim. Appellants have contended that Dr. Uhrich was called by Appellees as a fact witness, but offered expert testimony regarding Appellants' unlikely prospects for success in an action against Stuart Peterseim. Appellants have averred that the probative value of Dr. Uhrich's testimony about the unlikelihood of prevailing in the underlying case was substantially outweighed by the danger of unfair prejudice, in violation of Evid.R. 403(A).
 {¶ 22} During his testimony, Dr. Uhrich described his communications with Appellees during the preparation of his expert reports. At one point, Dr. Uhrich testified that he conveyed to Appellees his conclusion, based on specific factual assumptions provided by Mr. Casey, that Stuart Peterseim would not have had time to brake his vehicle and avoid colliding with Alan.
 {¶ 23} Appellants have argued that, because Dr. Uhrich was an accident reconstruction expert and testified about the contents of the expert reports he prepared for Appellees in the underlying claim, the jury interpreted his testimony as an expert opinion that Appellants would not have prevailed in their underlying claim and were therefore not entitled to damages on the legal malpractice claim. Appellants have maintained that they were unfairly surprised by Dr. Uhrich's testimony, which they were unable to counter with an expert of their own.
 {¶ 24} The trial court determined, however, that the factual content of Dr. Uhrich's communications with Appellees at the time he was preparing the reports was important for the jury's consideration of how Appellees proceeded in handling Appellants' case against Stuart Peterseim. The trial court admitted Dr. Uhrich's testimony not for the truth of the conclusions reached in his reports, but to establish the context in which Appellees were making decisions during their representation of Appellants. Since the conclusions reached by Dr. Uhrich may have played a pivotal role in how Appellants proceeded with their case against Stuart Peterseim, Dr. Uhrich's testimony provided a context that was valuable to the jury in determining whether Appellees breached the standard of care in their representation of Appellants. We therefore cannot conclude that the court acted arbitrarily, unreasonably or unconscionably in determining that the probative value of Dr. Uhrich's testimony was not substantially outweighed by the danger of unfair prejudice to Appellants.
 {¶ 25} Depositions of Anthony McEwen and Stuart Peterseim
 {¶ 26} During the trial of the malpractice action, the trial court permitted the depositions of Mr. McEwen and Stuart Peterseim to be read into evidence. Appellants have asserted, without explanation, that these depositions "should have been excluded for they pertained only to liability in the underlying case." However, Appellants introduced these depositions into evidence. Even if there was any error in the admission of this testimony, therefore, it was invited and induced by Appellants and cannot now be taken advantage of on appeal. Hal ArtzLincoln-Mercury, Inc. v. Ford Motor Co. (1986), 28 Ohio St.3d 20, paragraph one of the syllabus.
 {¶ 27} For all the foregoing reasons, Appellants' first assignment of error must fail.
 Appellants' Assignment of Error Number Two
"The trial court abused its discretion when it denied [appellants'] motion for a new trial with respect to [the] jury's verdict of no damages after finding [appellees] committed legal malpractice."
 {¶ 28} In their second assignment of error, Appellants have argued that the trial court erred by denying their motion for a new trial. Appellants have contended that the jury's finding that Appellants were not entitled to any damages was contrary to the evidence adduced at trial.
 {¶ 29} This Court reviews a trial court's ruling on a motion for a new trial under the abuse of discretion standard. Rohde v. Farmer
(1970), 23 Ohio St.2d 82, paragraph one of the syllabus. "`Abuse of discretion,' in relation to the [disposition] of a motion for a new trial[,] implies an unreasonable, arbitrary or unconscionable attitude on the part of the court." Poske v. Mergl (1959), 169 Ohio St. 70, 75.
 {¶ 30} Appellants have contended that Mr. and Mrs. Cooperider were presumed to have suffered damages in their wrongful death action against Stuart Peterseim pursuant to R.C. 2125.02, and that uncontroverted evidence that Appellants suffered pain and suffering and emotional distress was presented at trial. Damages are only presumed recoverable pursuant to R.C. 2125.02, however, for a wrongful death — i.e., "[w]hen the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued[.]" R.C. 2125.01. While Appellants were not required to prove liability in the underlying claim in the malpractice action, as discussed supra, they were required to demonstrate that their claim against Stuart Peterseim was at least colorable in order to demonstrate that any breach of the standard of care by Appellees proximately caused them damages. See Vahila,77 Ohio St.3d at 428; Nu-Trend Homes, 2003-Ohio-1633, at ¶ 19. Mr. Kennedy's testimony that it would have been difficult for Appellees to establish liability against Stuart Peterseim supports the jury's finding that no damages resulted from Appellees' breach of the standard of care. Consequently, the trial court did not abuse its discretion in denying Appellants' motion for a new trial as a result of the jury's finding that Appellants were not entitled to any damages. Appellants' second assignment of error is not well taken.
 Appellants' Assignment of Error Number Three
"The trial court committed reversible error by denying [appellants'] motion for judgment notwithstanding the verdict, since the jury's verdict of lack of damages was contrary to [appellants'] uncontroverted proof of damages."
 {¶ 31} In their third assignment of error, Appellants have argued that the trial court erred by denying their motion for judgment notwithstanding the verdict. As in their second assignment of error, Appellants have contended that the jury's finding that Appellants were not entitled to any damages was contrary to the evidence.
 {¶ 32} This Court reviews a trial court's ruling on a motion for judgment notwithstanding the verdict pursuant to Civ.R. 50(B) de novo.Schafer v. RMS Realty (2000), 138 Ohio App.3d 244, 257-258, appeal not allowed (2000), 90 Ohio St.3d 1472. In ruling on a motion for judgment notwithstanding the verdict, the court construes the evidence and all reasonable inferences most strongly in favor of the nonmoving party.Posin v. A.B.C. Motor Court Hotel (1976), 45 Ohio St.2d 271, 275. Where there is substantial evidence to support the non-movant's side of the case, upon which reasonable minds might reach different conclusions, the motion must be denied. Id.
 {¶ 33} Appellants have argued that, without the improper testimony of Mr. Kennedy and Dr. Uhrich, the jury would have concluded that Appellants would have suffered damages in excess of $133,500. However, we have already determined that the testimony of Mr. Kennedy was properly admitted to contest the proximate cause and damages elements of Appellants' malpractice claim. Construing this evidence most strongly in favor of Appellees, Mr. Kennedy's testimony supports the jury's finding that Appellants did not suffer damages proximately caused by Appellees' breach of the standard of care. Appellants' third assignment of error is without merit.
 Appellees' Cross-Assignment of Error Number One
"The trial court erred in admitting the testimony of James Orlando, PH.D."
 Appellees' Cross-Assignment of Error Number Two
"The trial court erred in denying [appellees'] motion for directed verdict."
 {¶ 34} In their cross-assignments of error, Appellees have argued that the trial court erred in admitting the testimony of Dr. James Orlando, who testified that Larry and Judith Cooperider suffered damages from emotional distress caused by Appellees' actions. Appellees have also contended that the trial court erred in denying their motion for a directed verdict. In light of our disposition of Appellants' assignments of error, we need not address Appellees' cross-assignments of error. See App.R. 12(A)(1)(c).
 III {¶ 35} Appellants' assignments of error are overruled. We need not address Appellees' cross-assignments of error. The judgment of the trial court is affirmed.
Judgment affirmed.
BAIRD, P.J. concurs.